**BANKERS TRUST COMPANY et al.**

v.

**The UNITED STATES.**

No. 89–67.

United States Court of Claims.

May 12, 1972.

David W. Richmond, Washington, D. C., Attorney of Record, for plaintiffs. M. Robert Gallop, Jesse Climenko, Anthony J. Napodano, New York City, Robert L. Moore, II, and Miller & Chevalier, Washington, D. C., of counsel.

Milan D. Karlan, U. S. Dept. of Justice, Tax Div., Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before DAVIS, Acting Chief Judge, LARAMORE, Senior Judge, and SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

ON DEFENDANT'S AND PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

LARAMORE, Senior Judge.

Plaintiffs in this case are, as the title indicates, transferees of the assets of the Mesabi Iron Company. The Mesabi Iron Company, hereinafter referred to simply as "Mesabi", was organized and incorporated under the laws of the state of Delaware on December 12, 1919. In 1961, Mesabi was dissolved and its assets were transferred to the Mesabi Trust pursuant to the Complete Plan of Liquidation and Agreement of Trust instituted to facilitate dissolution of the Mesabi Iron Company. Said Agreement of Trust provided, at section 1.4 thereof, that

> [if] any liability shall be assessed against the trustees as the transferees of the Trust Estate, on account of any liability of or through the Company [Mesabi], the trustees may use such part of the Trust Estate as may be necessary in contesting any such liability and in payment thereof.

As will hereinafter be described, a liability was assessed against the trustees

and thus the contesting of that liability is in the name of the trustees but on behalf of the assets of Mesabi Iron Company.

The events leading up to the assessed liability began when Mesabi filed its corporate income tax return for the calendar year 1960. On that return, Mesabi indicated an income tax liability of $3,836,611.86. However, after audit by the Internal Revenue Service, additional taxes were assessed against Mesabi for the taxable year of 1960 in the amount of $3,016,132.64, plus interest of $239,596.61. The deficiency, plus interest, was paid by plaintiffs on November 30, 1962. Following said payment, an additional assessment of $65,983.07 was made against Mesabi, also for the year 1960, which was subsequently paid by plaintiffs on April 1, 1963. On March 19, 1963, plaintiffs herein timely filed a claim for refund for the taxable year 1960 in the amount of $7,092,341.11, comprised of $6,852,744.50 in taxes and $239,596.61 in interest paid. This claim for refund asserted that the 1960 deficiency was erroneously assessed and that Mesabi had correctly computed its tax liability for 1960.

The above-noted deficiency was assessed against plaintiffs by the defendant, through the Internal Revenue Service, upon the theory that in 1960 Mesabi received, as ordinary income for Federal tax purposes, certain shares of its own capital stock in payment of certain claims for royalties on lands leased to Reserve Mining Company (Reserve), and that such stock should be valued at $12,799,352.50. Defendant, therefore, claims that plaintiffs should include into ordinary income $14,335,274.80 as the total amount received from Reserve in settlement of plaintiffs' claims for royalty income. Said total figure is comprised of the $12,799,352.50 previously noted as the total fair market value of the capital stock received by Mesabi, together with $1,535,922.30 of Minnesota royalty taxes payable by Reserve on behalf of Mesabi.

As for plaintiffs, they claim that the assessment was erroneous because the total value of the capital stock received was not as defendant claims, but instead the total fair market value for the 163,570 shares transferred was only $5,908,966, rather than $12,799,352.50. Correspondingly, the Minnesota royalty taxes payable by Reserve should also be reduced to $709,075.95, rather than the larger figure based on the government's assertion as to the fair market value of the capital stock.

The rather ominous difference in the fair market value for the 163,570 shares of Mesabi stock is attributable to the difference in opinions as to the precise date upon which the stock is to be valued. This difference, in turn, stems from the parties' disagreement as to the proper accounting procedures to be followed in this situation. Those differences arose under the following circumstances.

On February 19, 1960, the officers of Mesabi and Reserve agreed to recommend to their respective Boards and stockholders a settlement of certain controversies wherein Mesabi was contending, *inter alia,* that Reserve had not fulfilled its obligations to pay Mesabi approximately one-third of the net profits from the sale of taconite removed from lands leased to Reserve by Mesabi. These claims, according to plaintiffs, amounted to approximately $16,000,000 and were attributable to the failure of Reserve to pay over royalties on the production by Reserve of taconite for the years 1956 through 1959.[1] In settlement of those claims the officers and directors of each company arrived at the following terms for settlement of their differences: (1) Reserve would pay Mesabi $400,000 in cash; (2) Reserve would transfer the 163,570 shares of Mesabi's capital stock owned by Reserve to Mesabi; and (3) both parties agreed to alter existing lease agreements to provide for a royalty of $1 per ton of taconite produced after January 1, 1960. In exchange therefor, Mesabi agreed to ter-

---

1. Defendant asserts that plaintiffs' claims against Reserve were for approximately $27,000,000.

minate all arbitration proceedings and to dismiss all litigation between Mesabi and Reserve, and Reserve's present and former officers, directors and stockholders and for execution of mutual releases. These terms were embodied into a Settlement Agreement dated February 19, 1960 which was signed and approved by Reserve's Board of Directors and its two stockholders. On February 19, 1960, however, as for Mesabi, the Agreement could only be signed and approved by the Board of Directors since the stockholders of Mesabi could not approve the settlement until a stockholders meeting could be arranged. Therefore, pursuant to the Settlement Agreement of February 19, 1960, Mesabi also agreed to call a shareholders meeting for the specific purpose of having Mesabi's stockholders voice their opinion concerning the terms of the Settlement Agreement drafted by the corporate officers and directors. However, because of the formalities of notification and issuance of proxy statements, the meeting of the Mesabi stockholders was not held until April 22, 1960. At that meeting the shareholders of Mesabi voted to accept the Settlement Agreement as drafted on February 19, 1960. Thus the stage is set for our dilemma.

On February 19, 1960, the date upon which the Settlement Agreement was formulated the value of Mesabi stock, as determined by the closing price on February 18, 1960 for Mesabi stock selling on the American Stock Exchange, was 40⅜. On April 22, 1960, the date Mesabi's stockholders approved the settlement, the closing price for Mesabi stock on the Amex was 75½. Thus we have a rather large difference in value depending upon which date is used as the crucial date for determining the value of the stock received by Mesabi for Federal income tax purposes. As might be expected, plaintiffs assert that February 19 is the date when the value of the stock should be computed for purposes of determining the amount received in settlement of its claims against Reserve. In addition, Mesabi no longer

asserts that the amount received, irrespective of its valuation date, is anything other than ordinary income for the year 1960. As a matter of fact, Mesabi also agrees that under its method of accounting, which is the accrual method, the accrual date has been properly designated as April 22. Consequently, the only point of disagreement on this particular phase of the case lies in the area of valuation dates. That difference forms the basis for these cross-motions for partial summary judgment.

As the case is now presented, the sole question before the court is to determine the date upon which the stock received by Mesabi should be valued. If it should be determined that the February 19 date is the proper one, the case would virtually be at an end even though the motions are only for *partial* summary judgment. But, if the April 22 date is opted for as the proper valuation date, further questions would still remain to be resolved. Moreover, there remains yet another alternative; that alternative is to reserve final judgment on the valuation date until further evidence is presented to our commissioner on a trial of the case. For reasons to be explained hereafter, we choose the latter alternative.

In nearly all of the cases that come before the court on motions or otherwise, this court has endeavored to make its decision in a timely fashion. Indeed, this court is extremely amenable to disposing of any and all issues relevant to the outcome of a case at the earliest possible time. However, there are those times when it becomes necessary to reserve our final judgment until a later and more appropriate time. We think this is one of those cases.

At oral argument of these motions, plaintiffs' attorney indicated that the problem as posited may ultimately prove to be somewhat academic. By being termed "academic" plaintiffs' attorney explained that it is plaintiffs' contention that even if the valuation date is April 22, further evidence may show that the

value for the stock as ultimately established may be closer to the selling price on February 19 than that on April 22. If that assertion can be established by the evidence and developed through application of innovative legal principles, our selection of either date would become meaningless. Thus, plaintiffs' attorney urges that he be allowed to present the facts of his case to one of our commissioners on trial. Upon doing so it would be the task of our commissioner to decide if such facts and legal principles moot the question of what specific day is the proper valuation date. Thereafter, and with the case in its complete maturity, this court could consider the case with all relevant facts at our disposal.

Specifically, plaintiffs' attorney asserts that the evidence will show that the rather marked rise in value of the Mesabi stock was due solely to the public knowledge that Mesabi had settled a rather substantial claim for income. Furthermore, plaintiffs assert that this rise in value should be discounted when determining the true fair market value of the stock for Federal income tax purposes. If the facts show that such was the case, and if plaintiffs' theory as to discounting is also correct, the specific date for valuation becomes academic. Therefore, it is necessary and most judicious, in our opinion, to allow plaintiffs their day in court. Moreover, it is in the best interest of defendant to be allowed an opportunity to fully present its side of the case as to these "ify" questions. By submitting the case to trial both parties will have a full opportunity to present their complete case. If we were to decide now that one particular date is legally better than the other, in our opinion, we would be deciding the case before it has had the opportunity to be presented in the most efficient manner. Consequently, it is our decision to remand the case to our commissioner for a full trial. In so doing we must also indicate that it is our desire that the commissioner include in his consideration plaintiffs' assertions as to the rea-

sons for the increase in value and whether or not those facts have a bearing on the ultimate valuation of the stock for income tax purposes. When that is completed the case will be ready for this court's consideration.

Accordingly, plaintiffs' and defendant's motions for partial summary judgment are each denied without prejudice, and the case is remanded to a commissioner of this court for trial of the issues.